J-A04045-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| R.N., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| R.L.S., | : | |
| | : | |
| Appellee | : | No. 1556 WDA 2014 |

Appeal from the Order Entered August 21, 2014
in the Court of Common Pleas of Allegheny County,
Family Division, at No(s): FD04-004218

BEFORE:    BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:              **FILED MARCH 10, 2015**

R.N. (Father) appeals from the order of August 21, 2014, which awarded primary physical custody and sole legal custody of Re.N. and Ri.N. (collectively Children) to R.L.S. (Mother) and permitted them to relocate. We affirm.

Mother and Father were never married, and are the parents of two daughters, Re.N. (born in 2001) and Ri.N. (born in 2009). The trial court set forth the relevant factual and procedural history in its August 26, 2014 memorandum; therefore, we do not recite them herein. *See* Trial Court Memorandum, 8/26/2014, at 1-2.

After a trial on August 7, 2014, and after considering all custody and relocation factors pursuant to 23 Pa.C.S. §§ 5328(a) and 5337(h), the trial court entered an order that provided the following, in relevant part: Mother

*Retired Senior Judge assigned to the Superior Court.

has sole legal custody; Children will attend Baldwin-Whitehall School District; and, Mother had primary physical custody subject to periods of partial custody by Father. Trial Court Order, 8/26/2014.

Father timely filed a notice of appeal and a concise statement of maters complained of on appeal on February 27, 2014, and the trial court filed its opinion on October 24, 2014.

Father states the following questions for our review.

[1.] Whether the trial court erred and abused its discretion by ordering a change in custody and allowing for the relocation of the minor children[.]

[2.] Whether the trial court erred and abused its discretion in failing to dismiss Mother's claim for primary physical custody and relocation and ignoring the statutory requirements regarding relocation including Mother's pursuit of relocation for a second time within a period of only six months after signing a consent order of court regarding relocation, physical custody, school district and legal custody in August of 2013.

[3.] Whether the trial court erred and abused its discretion by not allowing various evidence and witnesses of Father to be heard at the trial of this case over the request and objection of Father's counsel.

[4.] Whether the trial court erred and abused its discretion in completely ignoring and in making no decision on Father' petition for contempt, sanctions and other relief which was joined in to be heard concurrently with the trial of this case by court order.

Father's Brief at 4 (suggested answers and unnecessary capitalization omitted).

Once a custody order is in place, a court may modify it on petition "to serve the best interest of the child." 23 Pa.C.S. § 5338(a). In performing the best-interests analysis, a trial court is required to consider the factors set forth at 23 Pa.C.S. § 5328(a). *See E.D. v. M.P.*, 33 A.3d 73, 80 (Pa. Super. 2011) ("[W]hen a party files a petition for modification of a custody order, the trial court must perform a 'best interests of the child' analysis considering all of the section 5328(a) factors."). When a party seeks to relocate, he or she bears the burden of proving that relocation will serve the best interests of the child, as determined by consideration of the ten factors listed at 23 Pa.C.S. § 5337(i)(1). In this case, with both relocation and modification at issue, consideration of both sets of factors was required. *See, e.g., A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) ("The trial court must consider all ten relocation factors and all sixteen custody factors when making a decision on relocation that also involves a custody decision.").

Following our review of the certified record, the briefs for the parties, and the relevant law, we conclude that the order and opinions of the Honorable Mark V. Tranquilli correctly address and dispose of Father's issues and supporting arguments. Accordingly, we adopt the trial court's order and opinions of August 26, 2014 and October 24, 2014 as our own, and affirm the trial court's disposition of Father's issues on the bases of those opinions.

J-A04045-15

The parties shall attach redacted[1] copies of the trial court's opinions to this memorandum in the event of further proceedings.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 3/10/2015

---

[1] Superior Court IOP 424 states, in relevant part: "No circulations or orders of the court, including per curiam decisions, unpublished memoranda, judgment orders and published opinions, shall include the names, addresses, birth dates, and other information that would permit the identification of … minors subject to or involved in … custody … proceedings. If information pertaining to other individuals, such as the parents or guardians of the minor, would readily reveal the above-prohibited information, that information shall be redacted."

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

R.        N.     ,

   PLAINTIFF,

   Vs.

R.    L.S.        ,

   DEFENDANT.

NO. F.D. 04-004218

## ORDER OF COURT

### BACKGROUND

The parties hereto, R.        N.   (Father) age forty-one (41) and R. L.S. (Mother) age forty-four (44) are the parents of two children born out-of-wedlock, Re.N. age 1 (12) and Ri.N. age 9 (5). Both children are healthy, well adjusted, intelligent with no special needs.

Mother and Father's relationship began in 1998 and was erratic through 2001 when their daughter Re.N. was born. After the birth, the parties resided as an intact family in Oakdale. A. Father's extended family, including his mother, paternal grandmother, (hereinafter referred to as PGM) and his two (2) brothers and their families also live in Oakdale. Father is employed at N   's Garage, a family business located within miles of his home. Mother grew up in Baldwin, PA and has family consisting of her father, maternal grandfather (hereinafter referred to as MGF) and her sister and her family in Baldwin. Between the years of 2003 and 2008, Mother along with Re.N. spent significant time away from the family home in Oakdale, and lived periodically in Baldwin as Mother helped care for her cancer-stricken Mother at her parents' home located in         Baldwin, PA. Since the birth of Ri.N. in 2009, the parties and children lived in Oakdale, with Re.N. attending school at the West Allegheny School District and Ri.N. attending a local preschool, Resurrection Lutheran Preschool.

Circulated 02/26/2015 03:19 PM

644a

After the children were born Father maintained full-time employment at the family business. Mother is currently employed on part-time basis as a house cleaner.

The parties testified that the relationship between Mother and Father was consistently plagued with verbal abuse and both parties alleged incidents of physical abuse.

On or about April 6, 2013, Mother, without providing a Notice to Relocate, moved with the children into maternal grandfather's home in Baldwin, PA. The oldest child, Re.N.1 was subsequently registered and began attending the Baldwin-Whitehall School District. It is important to note that, during Mother's periodic residence in Baldwin (2003-2008), Re. N. attended preschool and kindergarten in the Baldwin-Whitehall School District.

After failed attempts to communicate with Mother, Father filed a Complaint in Custody on April 17, 2013[1] seeking primary custody of the children. On May 6, 2013, while parties were going through the Generations process an interim order was entered giving both parties shared physical and legal custody, and setting forth that, absent an agreement between the parties, Re.S. and Ki.N. were to be returned to the schools they had attended in Oakdale. Parties did not reach an agreement and the children finished the remainder of the 2012-2013 school year at the West Allegheny School District and the Resurrection Lutheran Preschool. A Consent Order of Court-Custody was signed by the parties on August 14, 2013 in which they agreed to shared legal and physical custody, outlining a 5-2-2-5 schedule. It was further agreed that Re.N.1 and Ri.N. would continue at their respective schools through the 2013-2014 school year and that Mother would be responsible for transportation during her custodial periods.

Since the August 2013 Consent Order of Court-Custody, the parties have demonstrated an inability to communicate and co-parent, as evidenced by the fact that the Court has been inundated with upwards of twelve (12) motions to date.[2] On February 7, 2014 Mother filed a Notice to Relocate and Father promptly filed an objection on February 12, 2014. Both parties desire primary custody and after attempts to conciliate this matter, the case was listed for trial on August 7, 2014 before this Honorable Court.

---

[1] Mother also filed a Complaint in Custody on April 17, 2013, however Father's was treated as first in time.
[2] The Court notes that the majority of fillings were on behalf of Father.

Circulated 02/26/2015 03:19 PM

Accordingly, the Court will analyze the case under both the physical custody and relocation factors, beginning with the physical custody factors.

1. **Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?**

Mother was more accommodating in providing transportation for custody exchanges, where Father demonstrated that he was unwilling to do so. Father, through a narrow and unreasonable interpretation of an earlier Court order regarding the transportation arrangements for Mother's custodial time, made it an onerous task for Mother to exercise her custodial periods. Father provided comparatively little transportation, and if Mother did not drive to Father's, she would not have received her custodial time. Testimony revealed that Father required Mother, on her weekday custodial periods, to drive from Baldwin to Oakdale and arrive at noon to pick up Ri.N. from pre-school and then stay there for several hours until Re.N. was dropped off by bus. In addition, based on Father's custody proposal, which places responsibility for all transportation on Mother, it is clear to the Court that Father intends to persist in his efforts to frustrate Mother's relationship with her daughters. Despite the animosity that exists between the parties, Mother proposed a custody arrangement during the trial giving Father every weekend if she were to be granted primary custody. Additionally, Re.N. testified that Mother encourages her, despite Re.N.'s unwillingness, to have consistent telephone contact with Father. This leaves the Court with the impression that Mother is the parent who is more likely and willing to encourage and support on ongoing relationship with Father.

This factor favors Mother.

2. **The present and past abuse committed by a party or a member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

Both parents alleged minimal physical abuse towards each other and considerable verbal abuse, but the Court found it to be mutual. Mother and Re.N. alleged that Father injured Re.N. during a period when they resided as an intact family and that this injury necessitated an emergency room visit. Father insists that child received the injury while

646a

jumping on a trampoline. Despite hearing testimony from the parties, the Court was unable to make a determination as to how Re N. became injured and therefore did not use this incident in formulating the Court's opinion. Moreover, T. W. , a neighbor and friend of Father, testified that Mother verbally abused both children and witnessed an incident of physical abuse towards Re.N.. Re.N. denied abuse at the hands of her Mother. Re. N. indicated that Father grabs her by the ear and arm and threatens to remove their pets, and Mother spanks her and sends her to her room. Although the Court found testimony as to these events vague but credible, the Court does not feel that the either party's household presents a continued risk of harm to the children.

As such, this factor favors neither party.

### 3. The parental duties performed by each party on behalf of the child.

Although Father is capable of adequately caring for the children, it was clear from the testimony and evidence presented to the Court that much of the day-to-day care has been performed by PGM and Mother. This was demonstrated by Father's inability to communicate to the Court specifics about the children's doctor, dentist or his attendance of appointments. Mother takes the children to both the pediatrician and dentist and Father appears to be uninvolved in terms of the children's medical care. The Court took notice that Father stated that since the time of separation, he has not been provided adequate notice by Mother of doctor's appointments to allow him to attend. That being said, it became clear to the Court that prior to separation Father did not involve himself in this aspect of parenting. Father is to be commended for arranging for a tutor for Re. N. to help with her declining grades. However the Court feels that this was more in reaction to Mother's proactive step of requesting a parent/teacher conference to address Re N..'s grades. It was clear that Mother plays a more dominant role and takes the initiative in terms of Re. N 's educational needs. Mother testified to helping Re. N. one-on-one with homework, while Father only testified to helping Re.N. by paying for a tutor. Both parents expressed to the Court that they support extracurricular activities.

This factor favors Mother.

### 4. The need for stability and continuity in the child's education, family life and community life.

647a

The problems that exist regarding continuity of education for Re. N. , especially in terms of attendance, existed prior to the parties separating and the Court finds that these problems are attributable to the acrimonious home environment and to the transportation challenges that were testified to. Furthermore, the Court found that Re. N. 's testimony about her trouble at her current school from bullying by her peers played a role in her nerves/anxiety, which contributed to tardiness and absences at school. Although the Court is aware that a change in school will not prevent this in the future, the Court feels that Mother is more sensitive to this issue and is better equipped to help Re. N. deal with it. The Court notes that Re. N. testified to having established friendships with peers in the Baldwin-Whitehall school district and will be attending school with her cousin H. . Since Ri. N. is about to begin kindergarten, relocation at this point will be less disruptive for her.

The Court acknowledges that Father's home is more ideal in terms of physical amenities, i.e. the size of his home, the number of bedrooms, and the availability of a pool; but this factor is outweighed by the home environment provided in MGF's home in which Mother and the children will reside.

Both communities offer equal opportunities for the children. But because of the issues Re. N. has experienced at school, she has distanced herself from peers and has not elected to involve herself in extracurricular activities in Oakdale. The Court feels that the friendships and support network she has in Baldwin will allow Re. N. to avail herself of more opportunities in that community.

Therefore, the Court finds that this factor favors Mother.

5. **The availability of extended family.**

At first glance it would appear that this factor does not weigh in favor of either party, as the children have the advantage of extended family in both places. As noted in the background of this case, Father's mother lives next to Father, and his brothers also live in the area, and although this provides the opportunity to be involved in the children's day-to-day life, the Court did not hear evidence of any significant involvement. Conversely, MGF and Mother's sister live in the same household in Baldwin and the

Circulated 02/26/2015 03:19 PM

648a

Court heard testimony of day-to-day interaction with these family members and cousins. Currently, the Aunt and her children temporarily reside at PGF's house and have formed a close bond with the girls. The Court finds that this bond will continue even after Aunt, Uncle and the cousins move into their own home in Baldwin.

This factor slightly favors Mother.

6. **The child's sibling relationship.**

Both parents agree that the children have a close bond and should remain in the same household. When children stay with Father, it was clear to the Court that Re.N. is thrust into the role of caretaker for her younger sibling, due to the physical limitations on her grandmother. Living with Mother will enable Re.N. to concentrate on herself, and will allow the two to enjoy a healthier and more conventional sibling relationship.

As such, this factor favors Mother.

7. **The well-reasoned preference of the child, based on the child's maturity and judgment.**

By agreement of the parties, Ri.N. did not testify. The Court found credible testimony that Ri.N. is happy in both households and enjoys an equally close relationship with both parents. Re.N., who did provide testimony to this Court, was unequivocal in her preference to relocate with Mother. Although Re.N. testified that she loves her Father and that he loves her, she indicated that she is sometimes afraid of him and has a strained relationship with him. The Court fears that placing Re.N. in Father's home will further exacerbate this relationship.

This factor favors Mother.

8. **The attempts of a parent to turn the child against the other parent. Exception: domestic violence where reasonable safety measures are necessary to protect the child from harm.**

The Court finds evidence that both parents have attempted to influence Re.N., and to a lesser degree, Ri.N. relative to the merits of this matter. With that acknowledgement, the Court does not deem these attempts to be significant and therefore it did not impact this Court's opinion.

Circulated 02/26/2015 03:19 PM

649a

This is not a factor in this case.

9. **Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

The Court does not doubt Father's love for both of his children. However, as to this factor, the Court heard testimony that there is a strained relationship between Re.N. and Father, and therefore Mother is best equipped to satisfy the current emotional needs of her five-year-old daughter and Re.N. , who is pre-pubescent.

This factor favors Mother.

10. **Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

As discussed above, given the ages and developmental stages of these two female children, it is the Court's opinion that Mother is better equipped to attend to their respective needs. Re.N., for example, will begin dating soon and experiencing the emotional rigors attendant thereto. Based on the testimony regarding her relationship with each respective parent, it is apparent to the Court that Re.N. is more likely to approach and confide in Mother than Father.

11. **The proximity of the residences of the parties.**

Although both households are within the same county, the proximity between the residences has caused stress to the children, and transportation has been an obstacle. Although the residences are close enough to facilitate continuing contact with the non-custodial parent, the distance has clearly had a negative impact on both girls' day-to-day schedules and on Re. N. 's academic performance, such that a shared custody arrangement is not possible.

For the reasons stated above and below, this factor favors Mother.

12. **Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

Mother is employed part-time with a flexible schedule and has the support of her Father (PGF), who is healthy and actively involved in the life and supervision of the

650a

children. Father works full-time for the family auto/mechanic business and also has flexibility. However, when Father is at work, the children are supervised for the most part by PGM, who is eighty-three (83) years old, has considerable health issues and is confined to a wheelchair. PGM lives in a separate home on the same property, and is not physically able to provide adequate safeguards for the children. No testimony was provided to the Court that Father has arranged for any type of alternative childcare other than PGM, since the neighbor he previously relied upon has accepted full-time employment.

As the Court does not feel that Father has adequate or reliable care for the children, this factor favors Mother.

13. **The level of conflict between the parties; the willingness and ability of the parties to cooperate with one another.**

The Court heard considerable testimony of past and current conflicts between the parties, such that the Court does not feel that custody can be shared in this case. This is evidenced by the unilateral decisions made by both parties. There is no desire to cooperate or ability to communicate.

Therefore, this factor favors neither party.

14. **The history of drug or alcohol abuse of a party or member of a party's household.**

Although brief testimony was offered regarding Father's felony drug conviction in 2007, the Court did not deem it significant, and therefore this factor favors neither party.

15. **The mental and physical condition of a party or member of a party's household.**

With the exception of the parties' respective parents, as discussed above, the Court was not presented with testimony relative to any mental or physical limitations of either party. As such, this factor favors neither party.

16. **Any other relevant factors.**

All relevant factors have been addressed by this Court.

651a

By virtue of the fact that granting primary custody would require relocation of the children from Oakdale to Baldwin, the Court must also analyze the case under the factors for relocation. These factors are discussed below:

1. **The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**

   Mother is the party proposing relocation in this case. It is evident to the Court that Ri enjoys a positive relationship with her Mother, and has since birth. It is further evident to this Court that Mother assumes primary responsibility for all aspects of Ri's medical, physical and educational needs. Mother has an equally positive relationship with Re . Re describes Mother as actively involved in her day-to-day life and gave many examples of Mother's nurturing and emotional support.

   Father is the non-relocating party in this case. It is evident to the Court that R enjoys a positive relationship with her Father as well, and has since birth. The Court does not question Father's love for Ri, and although he has been involved in Ri's upbringing, Father has not been involved in her day-to-day care to the extent that Mother has. In fact, the nature of Re's relationship with Father has steadily deteriorated in recent years for the following reasons: blatant attempts to bribe her with pets; threats and mistreatments of the pets as a form of discipline; and his insensitivity to Re s preferences relative to choice of school, extracurricular activities and living arrangements.

   At the time of this trial the children are twelve (12) and five (5), and despite the age difference, it is clear to the Court that the girls enjoy a strong bond. With regards to the relationship between Re and Ri while in Father's custody, it resembles a mother-daughter relationship, to the extent that Reanna is often forced into the role of caregiver. When in Mother's custody, it appears to the Court that Re is able and allowed to be a child, and the two engage in a more appropriate sibling relationship.

Circulated 02/26/2015 03:19 PM

As stated previously, the girls have enjoyed a consistently close relationship with MGF all their lives and will continue to do so. As to PGM, although the girls have spent a significant quantity of time with her, the quality of that time has been diminished. This is evidenced by the fact that the role of custodian appears to have been thrust upon PGM, in spite of her obvious physical limitations. The Court finds that giving Mother primary custody will allow PGM to have more quality time with the children when they have custodial periods with Father. This will relieve PGM of the duties of caring for two reportedly energetic children, and will provide the opportunity for them to enjoy a more conventional relationship.

This factor favors Mother.

2. **The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special need of the child.**

Unlike the typical relocation case, the children would be relocating to a known location, PGF's home. This is a home that both children have spent significant time in, and where they are familiar and comfortable.

At the time of this decision Re. N· is twelve (12) years old and entering seventh (7th) grade, and Ri. N is five (5) years old, entering kindergarten. Relocation now is likely to be less disruptive to Ri. N due to her age. Although Ri. N· does have friends near Father's home and conversely has not developed many friendships in Baldwin, the Court does not feel that relocation at this time will be traumatic. Ri. N reportedly has an affable and energetic personality and is about to begin her schooling, all of which will provide the opportunity to readily form friendships. The Court notes that the relocating school, Paynter Elementary, is located on the same street as the relocating home and her cousin E.∘ : will also be attending the same school.

Re. N. has expressed her preference to move to Baldwin and is excited at the prospect of attending the Baldwin-Whitehall School District, where she received schooling in previous years. The Court finds Re. N ı to be an intelligent, articulate young woman who will excel academically regardless of which school she attends, as evidenced by the grades and PSSA scores she reportedly received at Baldwin during part of her fifth (5th) grade year. That being said, Re. N· and Mother testified that Re. N's grades at

Circulated 02/26/2015 03:19 PM

West Allegheny suffered because she was preoccupied while at school about Ri,N who was in the care of PGM, a semi-invalid. Re.N. has attempted to involve herself in extracurricular activities in Baldwin, such as softball, and has an existing support network. Re.N. testified that she has reconnected with friends in Baldwin that she made while attending pre-school, kindergarten and a portion of fifth (5th) grade. Furthermore, both girls have cousins in Baldwin who will attend the same district, and, in fact, the same schools. Especially in light of Re.N.'s developmental age, and her closer emotional bond with Mother, it is especially important that she has the opportunity to readily and regularly communicate with her.

This factor favors Mother.

3. **The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

As noted earlier by the Court, both parties reside in Allegheny County. Although Baldwin and Oakdale are too far apart to accommodate daily travel, making shared custody impractical, the distance is close enough to facilitate a meaningful relationship with the non-custodial parent. Both parties agree that shared custody is an untenable arrangement, but partial custody, including weekend visits, is certainly a viable alternative. As discussed previously, Mother has demonstrated that she is the parent who is better suited to preserve the girls' relationships with Father, while Father has demonstrated stubborn inflexibility, especially with regard to transportation. Note that financial considerations are not present in this case.

This factor favors Mother.

4. **The child's preference, taking into consideration the age and maturity of the child.**

This factor has been previously discussed.

5. **Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

This factor was addressed by the Court earlier. The Court finds that both parties have been wholly-consumed by litigation for over a year, and in their efforts to jockey for

Circulated 02/26/2015 03:19 PM

654a

position, have lost sight of their children's best interests by using them to varying degrees. The Court is hopeful that this decision will allow both parents to refocus and concentrate on raising two well adjusted children, who can enjoy positive relationships with both Mother and Father.

This factor favors neither party.

6. **Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

This relocation request is not premised upon any educational or financial opportunities for Mother. The court notes that awarding primary custody to Mother, and thereby allowing her to relocate with the children, will enhance the quality of Mother's life both emotionally and logistically, given her extensive family support network. This relocation will reduce the burdens of transportation, and the attendant potential for conflict. Both Mother and Father will have the opportunity to focus on the respective roles they are to play in their daughters' lives moving forward.

7. **Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**

As a supplement to the Court's analysis above, the Court notes that Ri.N.'s life is happy at both locations. For Re.N. , however, it is clear that her relationship with Father is strained by the current shared custody agreement. The Court finds that Re.N. will receive support from Mother that Father is unable to provide, given the current state of his relationship with Re .N.. It is the Court's hope that the custody arrangement attached hereto will alleviate the father-daughter tension, and allow him to be a positive force during Re.N. 's difficult teenage years.

This factor favors Mother.

8. **The reasons and motivation of each party for seeking or opposing the relocation. (Both parties share this burden equally in proving the integrity of their motives)**

Circulated 02/26/2015 03:19 PM

655a

As to both Re.N. and Ri.N. Mother seeks to eliminate the stress of frequent custody exchanges and the attendant physical and emotional tolls. Both parties testified that the girls are perpetually fatigued due to the distance that must be covered to effectuate the current custody scheme. Although the Court finds that Father sincerely desires to play an integral role in his daughters' lives, the Court suspects that Father's opposition to relocation is grounded more in his desire to punish Mother's abandonment, rather than in any consideration of his children's best interests. It is noteworthy that although Mother has entered into a new relationship with a life-long acquaintance, Father does not appear to have moved on. The Court is hopeful that the finality of this decision will compel Father to accept the final dissolution of his romance with Mother, and accept this new relationship as co-parents.

This factor clearly favors Mother, inasmuch as she obviously desires to assume a more active role in Re.N.'s life as she enters her teenage years.

9. **The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

The Court addressed this factor previously.

10. **Any other factor affecting the best interest of the child.**

All relevant factors have been addressed by this Court.

Based upon all of the above, the Court orders that the children will relocate with Mother to Baldwin and enters the following order.

**By the Court,**

_HOK Thomasville_ J.

Circulated 02/26/2015 03:19 PM

656a

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

R.N.

        PLAINTIFF,

Vs.

R.L.S.,

        DEFENDANT.

NO. F.D. 04-004218
SUPERIOR COURT #1556 WDA 2014

OPINION BY:

JUDGE MARK V. TRANQUILLI

COPIES SENT TO:

COUNSEL FOR THE PLAINTIFF:

MAX FELDMAN, ESQ
1322 FIFTH AVENUE
CORAOPOLIS, PA 15108

COUNSEL FOR DEFENDANT:

D. SCOTT LAUTNER, ESQ.
68 OLD CLAIRTON ROAD
PITTSBURGH, PA 1523

2014 OCT 24 PM 2: 17

657a

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

R.N,

PLAINTIFF,

Vs.

R.L.S.,

DEFENDANT.

NO. F.D. 04-004218
SUPERIOR COURT #1556 WDA 2014

## OPINION

Mark V. Tranquilli, Judge                                    Date: October 24, 2014

Plaintiff, R.    t N .  .(Father) appeals from the Order of Court dated August 21, 2014 awarding primary custody to Defendant, R . · L. S. .     (Mother).

The parties are the biological parents of two children born out-of-wedlock, R@.N. @ ვ _ (12) and Ri.N. @ ვ (5). Mother and Father's relationship began in 1998 and was erratic through 2001 when their daughter Re. N· as born. After her birth, the parties resided as an intact family in Oakdale at Father's home located in Coraopolis, PA. Between the years of 2003 and 2008, Mother along with Re.N. ;nent significant time away from the family home in Oakdale, as Mother helped care for her cancer-stricken Mother at her parents' home located in Baldwin, PA. Since the birth of Ri.N in 2009, the parties and children lived in Oakdale. Re.N· attended school at the West Allegheny School District and Ri.N.ttended a local preschool, Resurrection Lutheran Preschool. On or about April 6, 2013 Mother, without providing Notice to Relocate, moved within Allegheny County with the children into maternal grandfather's home in Baldwin, PA. The oldest child, R@.N. was subsequently registered and began attending the Baldwin-Whitehall School District.

Father filed a Complaint in Custody on April 17, 2013[1] seeking primary custody of the children. On May 6, 2013, while parties were going through the Generations process, an interim order was entered giving both parties shared physical and legal custody. It was further ordered

---

[1] Mother also filed a Complaint in Custody on April 17, 2013 however Father's was treated as first in time.

2

Circulated 02/26/2015 03:19 PM

658a

that Re⬛ and Ri⬛were to be returned to their respective schools in Oakdale for the remainder of the 2012-2013 school year, as the parties could not come to an agreement. A Consent Order of Court-Custody was signed by the parties on August 14, 2013, in which they agreed to share legal and physical custody, outlining a 5-2-2-5 schedule. It was further agreed that Re⬛ and Ri⬛would continue at their respective schools through the 2013-2014 school year and that Mother would be responsible for transportation during her custodial periods.

Since the August 2013 Consent Order of Court-Custody the parties demonstrated an inability to communicate or co-parent, and the Court was inundated with upwards of twelve (12) motions as of the date of trial.[2] On February 7, 2014 Mother filed a Notice to Relocate and Father promptly filed an objection on February 12, 2014. The Court was unable to conciliate this matter, as both parties desired primary custody, and a trial was held on August 7, 2014 before this Honorable Court. The parties agreed that the youngest child, Ri⬛ would not testify, but Re⬛ provided testimony and both counsel were permitted to ask questions of the child.

The Court issued a Parenting Plan and an Order dated August 21, 2014 awarding Mother sole legal and primary custody and Father partial custody, consisting of every other weekend and every Wednesday evening from 6:00pm to 8:00pm. The Court provided a detailed Memorandum setting forth its reasoning through the analysis of the sixteen (16) primary custody factors as required in Title 23 §5328 and the ten (10) relocation factors pursuant to Title 23 §5337(h). Father filed a timely appeal pursuant to Pa.R.A.P. Rule 905(2), including a Statement of Matters Complained of on Appeal, in which he raised twenty-five (25) assignments of error.

Upon reviewing the numerous matters complained of on appeal, the court believes the most effective and efficient means of addressing them is to break down the issues into three (3) general categories: credibility; procedural; and evidentiary.

At the outset, this Court is cognizant of the fact that custody cases are highly emotional, and the parents have strong opinions as to what is in the best interest of their children. As such, the Court sitting as the trial judge must make credibility decisions on the evidence and testimony that is presented to it. Not surprisingly, the Court finds that the majority of Father's assignments of error take issue with the Court's findings on credibility. This would apply to the assignments of error lettered A, C, F, G, H, M, N, O, P, S, U, W, and X. In general, the Court found Father to be intransigent in his dealings with Mother involving custody exchanges. This was most

---

[2] The Court notes that the majority of filings were on behalf of Father, Raymond Nadik.

3

Circulated 02/26/2015 03:19 PM

659a

glaringly illustrated by Father's narrow and inflexible interpretation of the transportation requirement of the August 2013 custody order, in which Mother was to be responsible for transportation during her custodial time. Father took advantage of the vague wording and made Mother provide all transportation to and from Father's house in order to exercise her custodial time, despite the fact that physical custody was shared. Prior to this order, the parties had shared the responsibility of transportation by establishing a half-way point for custody exchanges. Indeed, after providing all transportation for a few months, Mother retained new counsel in December 2013 and the parties soon reverted to meeting at the same half-way point to make custody exchanges. It was unreasonable to expect one parent to provide all transportation, in the absence of emergencies, none of which arose according to the parties. Father's narrow interpretation of the August 2013 custody order imposed an undue burden on Mother and fostered animosity between the parties. Father decided to continue down this path, instead of demonstrating a cooperative and fair approach more consistent with shared legal custody.

The Court recognizes that both parties in this case made unilateral decisions regarding their children. The Court analyzed these situations, as well as the respective actions and motivations of the parties, and it became clear that Father obstinately clung to his position without consideration of the needs or desires of his children, particularly Re. N. It was evident that the relationship between Father and Re. N. is strained, despite Father's rationalization and protestations to the contrary. Re. N. a testified that her Father frightens her; that he employs threats of harm to household pets as a means of discipline; and that he responds to her opinions authoritatively and inflexibly. Re. N. unequivocally testified that she wants to move to Baldwin to spend more time with Mother at this stage of her development, despite the fact that she and her sister admittedly had established friendships in Oakdale. The Court found it significant that when Re. N. communicated this to Father, his terse response was that she was staying at West Allegheny, whether she liked it or not; there was no explanation or discussion of his reasoning. As the trier of fact, the Court had the benefit of not only hearing the testimony first-hand, but also observing the demeanor of the witnesses. Using these tools, the Court made a finding that Mother was more credible in this case and found that most factors favored her, as the parent most likely to attend to the emotional needs of her daughters.

Inasmuch as letter F relates to a safety concern for the children, this Court will address this assignment of error individually. Although the parties testified that the relationship between

4

Circulated 02/26/2015 03:19 PM

Mother and Father was consistently plagued with verbal abuse, and both parties alleged incidents of physical abuse, the Court did not find any credible testimony that either parent in this case posed a safety risk to the children, and demonstrated the same by holding that this factor favored neither party.

The next category of Father's assignments of error were procedural, lettered E and Y. Assignment of error E alleges that this Court erred in not including a decision, in its order, regarding Father's contempt petition that had been joined to be heard with the custody trial.[3] Father's Petition for Contempt, Sanctions and other Relief alleged that Mother failed to transport the children to Father on six (6) dates separate and apart from the finding of contempt on June 10, 2014. The Court specifically notes that even after Mr. Scott Lautner was retained by Mother in December 2013, and the parties reverted to shared transportation, Father continued to file contempt petitions against Mother for violating the transportation provision of the August 2013 custody order. Additionally, Father sought sanctions against Mother for failure to pay attorney fees associated with the contempt finding by the hearing officer.[4] Mother filed exceptions on the finding of contempt and those were pending at the time of trial.[5] Since exceptions were already pending, this Court did not explicitly rule on the contempt matter, but the Order and Parenting Plan clearly demonstrated that the transportation responsibilities in this case should have been, and shall be shared equally moving forward. As such, this holding addressed, albeit not specifically, Father's contempt petitions regarding Mother's failure to transport the children on the specific dates complained of. Most importantly, as set forth above, the Court does not believe that Mother *was* violating the transportation provisions of the Order; as a result, no attorney fees are owing. As to the assignment of error, letter Y, Father cites no authority, nor directs the Court to a provision within the August 14, 2013 Custody Consent Order, to support the proposition that Mother is somehow foreclosed from re-filing a Notice of Relocation after having entered into the Consent Order six (6) month earlier. As such, Mother's request for relocation was properly before this Court.

The final category of Father's matters complained of on appeal are evidentiary in nature, including assignments of error lettered B, D, I, J, K, L, Q, R, T, and V. Father complains that the

---

[3] Petition and Order dated July 18, 2014.
[4] No affidavit of services was submitted at the Exceptions hearing or at the Relocation trial. Relocation Petition Hearing Transcript dated August 7, 2014 Pg. 466-467
[5] *See* Tr. pgs. 215, 226-228, 357, 466-467. Mother has since withdrawn her exceptions.

5

661a

Circulated 02/26/2015 03:19 PM

Court afforded Mother's testimony greater weight than his, and also contends that the Court ignored Father's evidence regarding, *inter alia*, the environment of each household, including schooling, and the quality of life for Mother and the children. As stated above, Mother and Father's relationship had completely deteriorated, resulting in an unhappy living environment for all parties, including the children. This relocation was never premised on educational or financial opportunities. In taking exception to the Court's finding, Father completely discounted the emotional benefits that will accrue to Mother and the children by living in a house that has emotional stability and an established, adequate support network. The Court found that the stress of living in Father's household negatively impacted Re:.N. s performance at school and, indeed, her physical well-being; there was ample testimony provided on these facts. Although the Court, by agreement of counsel, did not receive testimony from five (5) year old Ri.M, the Court heard nothing from either party that would lead the Court to believe that this well-adjusted and playful child would be unable to thrive in either household. Furthermore, the Court found that the bond between the siblings is strong and it would be detrimental for the children to reside apart, and made its decision with that in mind.

The Court will address assignments of error B and D specifically, since they challenge the Court's rulings on admissibility. Letter B assigns error to the Court's consideration of Mother's amended Pre-Trial Statement. Mother's counsel did not amend his pre-trial statement unilaterally, but rather at the direction of this Court, in order to elicit more details about Mother's custody proposal.[6] As such, counsel did not violate this Court's order and no error was committed by allowing its consideration. Lastly, letter D challenges the Court's ruling on the admissibility of exhibits and witnesses offered by Father. Of the nine (9) witnesses offered by Father, only two (2) were deemed cumulative.[7] The offer of proof as to witness Mr. Drudy focused on Father's parenting abilities, which were abundantly covered through multiple witnesses. The second witness deemed cumulative was a twelve (12) year-old child, S1 W'. ., whom counsel sought to call as a rebuttal witness to counter Re:. N. testimony. However, the child's adult mother, T. W. , had already testified at length in direct contradiction to Re..N., so her minor daughter's testimony was therefore deemed cumulative. Finally, as to the exhibits offered by Father during the trial, all but one (1) was admitted or

---

[6] *See* Tr. 231-232.
[7] *See* Tr. 435, 503.

6

Circulated 02/26/2015 03:19 PM

662a

stipulated to by counsel. The only exhibit that was not admitted was a printout from the Allegheny County property website, noting the dimensions of maternal grandfather's home. This exhibit was withdrawn by counsel.[8]

The Court is aware that custody decisions typically make one, if not both parties unhappy. That being said, the Court's role is to make findings that are in the best interests of the child(ren), not to appease the parents. At the heart of Father's matters complained of on appeal is his desire for something near the *status quo*, and his stubborn refusal to believe that the children could thrive in an environment other than that which they had already experienced with him. If such a presumption existed, a relocating parent could rarely, if ever, prevail, despite having satisfied the burden required by Title 23. Mother's parenting style is warm and child-centered, while Father's is authoritative and inflexible, influenced to some degree by a desire to punish Mother for leaving him. Simply put, Mother is better suited to meet the needs of the children in this case, and so the Court vested sole legal custody in her, since Father's intransigence has proven to be an insurmountable obstacle to any other scheme.

By the Court,

_M.N. Hramouille_

---

[8] *See* Tr. 168-171, 506

7

Circulated 02/26/2015 03:19 PM